IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

―――――

**ROBERTO GONZALEZ and LARA GONZALEZ**,

      Plaintiffs,

v.                   No. CIV 07-577 BB/RHS

**JASON HARVEY, JESUS BANUELOS, and MARK BOYERS, Albuquerque Police Officers, in their individual capacities, and CITY OF ALBUQUERQUE, EX REL. ALBUQUERQUE POLICE DEPARTMENT**,

      Defendants.

## MEMORANDUM OPINION AND ORDER

   This matter comes before the Court for consideration of Defendants' and Plaintiffs'[1] cross-motions for summary judgment (Docs. 51, 56). The Court has reviewed the submissions of the parties and the relevant law. Based on the evidence presented by the parties and the arguments they have raised, Defendants' motion will be granted in part and denied in part, and Plaintiffs' motion will be denied.

   This is a 42 U.S.C. Section 1983 case arising out of an incident during which Plaintiff Roberto Gonzalez ("Gonzalez") was stopped while driving a vehicle. He was given several citations and his vehicle was seized. Following the initial seizure of the vehicle a forfeiture action was initiated under a City of Albuquerque ordinance, and as a result Plaintiffs lost the use

---

[1] Since the forfeiture portion of the action is no longer extant, the Court has altered the caption of the case for purposes of this opinion, removing the forfeiture parties and designating the remaining parties as "Plaintiffs" and "Defendants."

of their vehicle for a considerable period of time. The forfeiture action was dismissed, but Plaintiffs were allowed to file an amended complaint raising constitutional and state-law claims. These claims fall into two major categories: claims attacking the initial stop of Gonzalez' vehicle, and claims attacking the seizure and attempted forfeiture of that vehicle. After the amended complaint was filed, Defendants removed the case to this Court. Both parties have now filed motions for summary judgment which must be decided.

**Standard of Review**

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In addressing the parties' motions, the Court must "view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." *Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Serv.*, 165 F.3d 1321, 1326 (10th Cir. 1999). The party moving for summary judgment bears the burden of showing that no genuine issue of material fact exists. *See Adams v. American Guarantee and Liability Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000); *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir.1998) (stating that moving party may satisfy its burden by "pointing out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim.") Once the movant meets its burden, the nonmovant must identify evidence that would enable a trier of fact to find in the nonmovant's favor. *See Thomas v. Wichita Coca-Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir. 1992).

**Discussion**

***Heck v. Humphrey* Issue:** In Defendants' motion for summary judgment, they contend all of Plaintiffs' claims must be dismissed under the authority of the Supreme Court case of *Heck v. Humphrey*, 512 U.S. 477 (1994). However, the *Heck* case only "precludes § 1983 claims relating to pending charges when a judgment in favor of the plaintiff would necessarily imply the

invalidity of any conviction or sentence that might result from prosecution of the pending charges." *Beck v. City of Muskogee Police Dep't*, 195 F.3d 553, 557 (10th Cir. 1999). Claims such as the ones Plaintiffs bring in this case, alleging illegal arrest or illegal seizure of property, are generally not covered by the *Heck* doctrine. *See id.*, 195 F.3d at 558 (*Heck* did not apply to the plaintiff's claims of illegal arrest, search and seizure, or seizure of the plaintiff's vehicle). Put simply, this is so because such claims are not direct attacks on a possible conviction, and a conviction would not necessarily be rendered invalid if the plaintiff prevailed on his claims. *Id.* Defendants' argument, therefore, must be rejected.

**Claims Arising Out of Initial Stop:** Plaintiffs maintain Defendants Harvey and Banuelos[2] did not have reasonable suspicion to pull over Gonzalez and initiate the stop of his vehicle. Alternatively, they argue that even if such reasonable suspicion was present, Defendants certainly did not have probable cause to arrest Gonzalez. Defendants made the stop because they believed Gonzalez was violating a county trespass ordinance by driving his vehicle onto posted and restricted property belonging to the Albuquerque Metropolitan Area Flood Control Authority ("AMAFCA"). Plaintiffs raise a number of arguments against the existence of a basis for the stop, mostly based on the alleged lack of visible signs in the area where Gonzalez entered the AMAFCA property (commonly known in the Albuquerque area as a "ditch" or "arroyo"). Defendants, on the other hand, point out that this issue was decided against Plaintiffs in a criminal case brought against Gonzalez. In that case, Gonzalez was convicted of driving on a revoked license and (in a separate trial following an initial mistrial) of trespass. The lower court specifically determined that Defendants had reasonable suspicion to stop Gonzalez to investigate whether he was trespassing. This determination has recently been affirmed by the New Mexico Court of Appeals, in an unpublished opinion. *State v. Roberto Gonzalez*, No. 28,716, filed

---

[2]For ease of reference, the Court will refer to these two Defendants as "Defendants" and will specify when referring to either Defendant Boyers or the City of Albuquerque.

October 2, 2008.[3]  The Court of Appeals also held that Defendants acted properly when, after the stop, they asked Gonzalez for identification and discovered he was driving on a "revoked" (interlock only) license.

Without explaining the legal grounds for their assertion, Defendants maintain the issue raised by Plaintiffs has been "settled" by the state courts' decisions and is a "waste of the Court's time."  The Court agrees with Defendants, although it would have been more helpful if the legal analysis underlying their conclusion had been explained.  The proper analysis to apply is the doctrine of collateral estoppel, also known as issue preclusion.  The Tenth Circuit, in accordance with other circuits and the Supreme Court, has held that this doctrine may preclude a § 1983 plaintiff from litigating a Fourth Amendment issue if a state court has decided that same issue in a prior case.  *See Lavicky v. Burnett*, 758 F.2d 468, 473 (10th Cir. 1985); *see also Crumley v. City of St. Paul*, 324 F.3d 1003, 1006-07 (8th Cir. 2003) (plaintiff was collaterally estopped from asserting lack of probable cause for arrest, where issue had been decided against her in prior state-court criminal proceedings); *Allen v. McCurry*, 449 U.S. 90, 105 (1980) (rules of collateral estoppel apply to civil-rights claims brought under § 1983, and estoppel may prevent re-litigation of constitutional issue decided against plaintiff in state criminal proceedings).

Plaintiffs obviously had a full and fair opportunity to litigate the illegal-stop and illegal-arrest issues in the state court proceedings, and have been unsuccessful.  Furthermore, application of collateral estoppel is proper in this case despite the fact that Gonzalez has apparently filed a petition for writ of certiorari with the New Mexico Supreme Court, in an attempt to have that Court reverse the decision of the Court of Appeals.  *See, e.g.,* 18A Wright, Miller & Cooper, *Federal Practice and Procedure*, § 4433, p. 78 (2002) (final judgment retains

---

[3]This opinion addresses only Gonzalez' conviction for driving on a revoked license and not the subsequent conviction for trespass.  According to Plaintiffs, Gonzalez appealed the trespass conviction to the district court, and was not convicted of trespass in a trial de novo in that court.

all of its preclusive consequences even if an appeal of that judgment is pending); *accord*, *Phelps v. Hamilton*, 122 F.3d 1309, 1318 (10th Cir. 1997) (noting that Kansas follows the now-majority view that res judicata effect of a judgment is not vitiated by the pendency of an appeal); *Starzenski v. City of Elkhart*, 87 F.3d 872, 878 (7th Cir. 1996) (same result, applying Indiana law).[4] The requirements of the collateral-estoppel doctrine having been met, Plaintiffs are bound by the outcome of the appeal in the underlying criminal case.[5] *See generally Phelps* (collateral estoppel is appropriately applied against a party where a prior final judgment has actually decided an issue that was necessary to support the judgment). As pointed out above, the Court of Appeals determined that the initial stop of Gonzalez was lawful, and that it was proper for Defendant Harvey to ask Gonzalez for identification, at which point Harvey discovered Gonzalez was driving with an interlock-only license. This gave Defendants the probable cause they needed to arrest Gonzalez, rendering Plaintiffs' illegal-seizure claim without merit.

The Court notes that Plaintiffs' argument that Defendant Harvey arrested Gonzalez before he asked for his identification, and before he had probable cause to do so, is unavailing. Plaintiffs rely on Harvey's testimony that he considered Gonzalez to be under arrest for

---

[4] It should be noted that the Court is required to apply New Mexico law to decide this issue, as the preclusive effect of a judgment issued by a state court depends on that state's law. *See Phelps* (applying Kansas law to determine preclusive effect of a Kansas judgment; *Starzenski,* 87 F.3d at 877 (pointing out that by federal statute, Indiana law determines preclusive effect in federal court of Indiana state-court judgment). The Court has been unable to find a New Mexico case on point, but believes New Mexico would follow the majority rule. This is especially true where, as here, the initial appeal as of right to the Court of Appeals has been concluded, and the only avenue of review remaining is a discretionary petition for writ of certiorari.

[5] The Court notes it is not necessary to decide whether Plaintiff Lara Rosa Gonzalez is in privity with Roberto Gonzalez for purposes of the collateral-estoppel analysis in this case. The purported cause of action for illegal stop or arrest "belongs" only to Roberto Gonzalez and not to Lara Rosa, who was not present at the scene and was not detained or arrested. Whether or not she is collaterally estopped, therefore, she has no Fourth Amendment claim for illegal detention.

trespassing as soon as Gonzalez had been stopped, and contend that even if reasonable suspicion might have existed for the stop, the subsequent arrest was not supported by probable cause. However, the law is clear that an officer's subjective belief as to whether he is effecting an investigative detention or a full-scale arrest is not dispositive of the question of whether a stop has escalated into an arrest. *See Gallegos v. City of Colorado Springs*, 114 F.3d 1024, 1032 (10th Cir. 1997). Instead, a court is required to examine the totality of the circumstances to decide whether the officer's actions were justified by the amount of suspicion present. *Id.* The New Mexico Court of Appeals decided in this case that Defendant Harvey acted properly in requesting identification from Gonzalez after the stop, noting that an officer is always allowed to ask for identification following the stop of a vehicle. This is in accord with established law. *See, e.g., U.S. v. Rice*, 483 F.3d 1079, 1084 (10th Cir. 2007) (during traffic stop, officer may ask even passengers for identification, and run background check on driver); *U.S. v. Long*, 320 F.3d 795, 799 (8th Cir. 2003) (officer at a traffic stop may check driver's identification and vehicle registration, ask driver to step out of vehicle, and ask routine questions). The Court of Appeals decision therefore conclusively establishes that: (1) the initial stop of Gonzalez' vehicle was permissible; (2) the request that Gonzalez produce identification was permissible; and (3) the ensuing arrest of Gonzalez, for driving on a revoked license as well as other offenses, was lawful. For that reason, summary judgment will be granted to Defendants on Plaintiffs' illegal-seizure claim.

**Claims Arising Out of Seizure and Attempted Forfeiture of Plaintiffs' Vehicle:** Defendants maintain that the initial seizure and impoundment of Plaintiffs' vehicle was proper because Roberto Gonzalez was driving the vehicle without an interlock device, even though his driver's license had been revoked and he had received a license limited to interlock-device-equipped vehicles. Plaintiffs concede that if the initial stop and subsequent arrest were proper, the initial seizure of the vehicle also was constitutionally proper. However, they argue that the continued seizure of the vehicle and the refusal to return it to them was not constitutional.

According to Plaintiffs, this is because the forfeiture proceedings started by Defendants were based on a City of Albuquerque ordinance that did not apply to their vehicle.  Plaintiffs point out that the AMAFCA property where Gonzalez was stopped is outside the city limits, and argue that a municipal ordinance can only be applied within the boundaries of that municipality.

In response, Defendants argue they clearly had authority to arrest Gonzalez, even outside the city limits, because they were cross-deputized and given authority to enforce the law anywhere in Bernalillo County, not just within the City of Albuquerque.[6]  Defendants also cite caselaw for the proposition that if they observe a violation of a city ordinance inside city boundaries, they can engage in fresh pursuit of the suspected misdemeanant and arrest him outside the city limits.  The Court does not quarrel with Defendants' authorities; however, they are not applicable to the question at hand.  The real issue in this case is not whether Defendants had authority to arrest Gonzalez outside the city limits; it is clear they did have such authority pursuant to their Bernalillo County cross-deputization.  What is at issue here is whether, regardless of the legality of the stop and detention of Gonzalez, the City of Albuquerque forfeiture ordinance has any force in this case.

In New Mexico, "[t]he basic rule is 'that a local government has no extraterritorial powers and cannot, without express authorization from the state, extend its regulations or the force of its laws outside its own boundaries.'" *Village of Los Ranchos de Albuquerque v. City of Albuquerque,* 889 P.2d 185, 195 (N.M. 1994) (quoting Osborne M. Reynolds, Jr., *Handbook of Local Government Law* § 54, at 156 (1982)); *see also City of Hobbs v. Biswell*, 473 P.2d 917, 919 (N.M. App. 1970) (statute grants municipalities police power to protect their inhabitants and preserve peace and order within the municipal limits).  This is in accord with the rule in other jurisdictions – absent a statute or constitutional provision granting extraterritorial authority to a municipality, the ordinances and regulations of the municipality apply only within the boundaries

---

[6]It is undisputed that the AMAFCA property is within Bernalillo County but outside the Albuquerque city limits.

of that entity. *See, e.g., Seigles, Inc. v. City of St. Charles*, 849 N.E.2d 456, 458 (Ill.App. 2006); *Hicks v. Cleveland Hts.,* 832 N.E.2d 1275, 1277-78 (Ohio App. 2005). The New Mexico Legislature has specifically given municipalities the power to preserve peace and order only "within the municipality..." NMSA 3-18-1(G). Unless an exception can be found in a statute enacted by the Legislature, therefore, the City of Albuquerque's forfeiture ordinance can be applied only within the city limits. Defendants have not directed the Court's attention to any such exception, except the statute authorizing fresh pursuit of a misdemeanant. NMSA 31-2-8. As the Court has already noted, however, the power to arrest a criminal who has committed an offense inside the city and then fled outside its boundaries is not the same as the power to apply an ordinance to events occurring completely outside the city limits. Therefore, the fresh pursuit statute does not provide the authority Defendants needed to apply the forfeiture ordinance to Plaintiffs' vehicle, and the Court has found no other statute that might provide such authority.

Pursuant to the foregoing, if the undisputed facts in this case established that Gonzalez was driving only outside the boundaries of the City of Albuquerque, it would also be undisputed that the forfeiture ordinance could not be applied to him or the vehicle he was driving. *Cf. County of San Bernardino v. Ranger Ins. Co.*, 34 Cal.App.4th 1140, 1149 (1995) (bail forfeiture is valid only when statute authorizing same remains valid). Defendants, however, maintain the opposite is true – they claim that when they first saw Gonzalez driving, he was near the intersection of 98th Street and Central Avenue. They also ask the Court to take judicial notice that this intersection is within the Albuquerque city limits. In sum, they argue that if a law enforcement officer sees an individual driving within the city limits, validly stops the individual outside the city limits, and finds out the individual was driving on a revoked license, the city forfeiture ordinance can be applied and the individual's vehicle is subject to forfeiture.

One major problem with this argument is Defendants' factual premise – that they saw Gonzalez driving within the city limits before stopping him outside those limits. The evidence submitted to the Court establishes a high degree of uncertainty as to just where Gonzalez was

when Defendants first encountered him, and whether they ever saw him driving within the Albuquerque city limits.  For example, at one hearing[7] Defendant Banuelos testified that Defendants first encountered Gonzalez when he was already parked on the AMAFCA property, which is outside the city limits.  [Def. MSJ, Exh. C, pp. 113-14]  Defendant Banuelos repeated that testimony in a different proceeding.  [Pltf. Resp. unmarked Exh. 2, pp. 42-43]  Defendant Harvey testified differently at various times.  At one trial, he stated he first saw Gonzalez when he and Defendant Banuelos were west of 98th Street and driving westbound on Central Avenue.  [Def. MSJ, Exh. D, p. 182]  Gonzalez was a half-mile or mile ahead of them when Defendant Harvey first saw his pick-up.  [*Id.*]  At another proceeding, Defendant Harvey testified he could not remember where he and Defendant Banuelos were on Central when they first saw Gonzalez, but Gonzalez was driving ahead of them and they saw him turn onto the AMAFCA property.  [Def. Resp., Exh. A, p. 4]  He also testified, at yet another trial, that when he first saw Gonzalez he was not sure where Gonzalez came from to get onto Central Avenue, but he saw Gonzalez traveling westbound in the truck.  [Pltf. MSJ, Exh. 1, p. 32]

It is apparent that the majority of the evidence submitted to the Court indicates Defendants did not in fact see Gonzalez driving within the city limits, or at least could not testify that they saw him do so.  The only part of the evidence that raises an issue of fact on this question is Defendant Harvey's testimony that he saw Gonzalez driving a half-mile or a mile ahead of Defendants, heading west on Central Avenue, when Defendants were near the intersection of 98th Street and Central.  The Court is unable to discern from this testimony whether Gonzalez was or was not within the city limits when Defendants first observed him driving westbound on Central.  It is apparent, therefore, that there is an issue of fact as to whether Defendants ever saw

---

[7]There were a number of trials and hearings in the state-court proceedings, and the Court has not attempted to specifically identify which proceeding might have produced which transcript portion.

Gonzalez driving inside the Albuquerque city limits, and neither party can be granted summary judgment on this issue.[8]

It is necessary to perform one more step in the analysis, to determine whether a viable § 1983 claim remains to be tried. Assuming for purposes of this opinion that Plaintiffs have successfully proven the forfeiture ordinance does not apply to their vehicle, the Court must decide whether the application of the ordinance caused an actionable violation of their constitutional rights. Plaintiffs contend that pursuing forfeiture under the ordinance was a violation of their Fourth Amendment right to be free from an unlawful seizure of property. This case, however, presents an unusual situation because it has already been determined that the initial seizure of the vehicle, pursuant to the valid stop of Gonzalez, was constitutionally proper. The focus of the case, therefore, is on the continuation of the seizure by pursuing forfeiture under the city ordinance, rather than on the original seizure. Normally, plaintiffs alleging unlawful

---

[8]The Court notes Plaintiffs' argument that it does not matter whether Gonzalez was driving within the city limits or not, because the forfeiture ordinance does not apply to his conduct. Plaintiffs contend the ordinance applies only to vehicles operated by a person whose license has been revoked. They argue it does not apply to Gonzalez, whose license had been revoked, who was then able to obtain a license limited to driving vehicles equipped with an ignition interlock device, but who was driving a vehicle that did not have such a device. This may or may not be a valid interpretation of the ordinance, but the Court need not decide that question in this case. It is apparent the meaning of the ordinance is at best open to discussion; on its face it applies to any person whose license has been revoked, without granting an exception to those who later obtained a limited license. Albuquerque Ordinances, § 7-6-2. A reasonable argument can be made, therefore, that the ordinance would allow forfeiture of a vehicle even if it is equipped with an interlock device and even if the driver has obtained an interlock-limited license (of course, this could raise preemption issues that are well beyond the scope of this opinion). What is important for purposes of this case is that no court has yet construed the meaning of the ordinance as applied to situations such as the one presented in this case. For that reason, and because the ordinance is not plainly inapplicable on its face, there is no clearly established law that could have guided Defendants in their application of the ordinance, and they would be entitled to qualified immunity even if it is shown that they were in error in believing the ordinance applied to drivers such as Gonzalez. *See generally McFall v. Bednar*, 407 F.3d 1081, 1087-88 (10th Cir. 2005) (discussing clearly-established-law requirement; contours of right must be sufficiently clear as a result of applicable case law).

10

retention of their property are required to show they were prejudiced by the deprivation of their property without due process in order to prevail. *See, e.g., Matter of McCorkle*, 972 F.Supp. 1423, 1436 (M.D. Fla. 1997) (analyzing due-process aspects of retention of property under civil forfeiture statute). On the other hand, Plaintiffs' claim that the forfeiture ordinance was completely inapplicable to their vehicle may be more analogous to an argument that Defendants engaged in malicious abuse of process by initiating a legal proceeding without probable cause to do so, which resulted in the continued seizure of Plaintiffs' property. *See, e.g., Mondragon v. Thompson*, 519 F.3d 1078, 1083 (10th Cir. 2008) (after the institution of legal process against a defendant, any remaining constitutional claim is analogous to a malicious prosecution claim); *see also Wilkins v. DeReyes*, 528 F.3d 790, 799 (10th Cir. 2008) (§ 1983 malicious prosecution claim includes following elements: (1) defendant caused continued confinement or prosecution; (2) original action terminated in favor of plaintiff; (3) no probable cause supported continued confinement; (4) defendant acted with malice; and (5) plaintiff sustained damages). The ultimate question in a § 1983 case, of course, is not whether each element of malicious prosecution can be established; it is whether a constitutional deprivation can be shown. *See Mondragon, supra*, 519 F.3d at 1084, n. 7. In any event, the parties have not briefed the precise issue of what constitutional analysis is the "correct" one to apply in a situation such as this one, and the Court will therefore not decide at this point whether a constitutional due-process or malicious-prosecution analysis is the proper one to apply in this case.

   **Qualified Immunity:** As discussed above, if the facts are viewed in the light most favorable to Plaintiffs, they have established that a constitutional violation occurred. Defendants, however, have raised the defense of qualified immunity. The Court finds it is clearly established that in New Mexico, a municipal ordinance does not apply outside the boundaries of that municipality absent authorization from the Legislature. In particular, there is no statute authorizing the application of the Albuquerque forfeiture ordinance to conduct occurring wholly outside the city limits. However, Defendants may still be able to prove an entitlement to

qualified immunity at trial, because they may be able to show they reasonably believed the forfeiture ordinance applied to Plaintiffs' vehicle. *See generally York v. City of Las Cruces*, 523 F.3d 1205, 1210 (10th Cir. 2008) (qualified immunity insulates a defendant who reasonably, albeit mistakenly, concludes that probable cause existed). As noted above, there is a fact issue as to whether Defendants observed Gonzalez driving within the city limits, or reasonably believed he was driving within those limits. Furthermore, the evidence is unclear as to whether Defendant Harvey or Defendant Banuelos knew or should have known, at the time the forfeiture proceeding was instituted, that the stop and impoundment of the vehicle occurred outside the city limits. Finally, it is entirely unclear what role Defendant Harvey or Defendant Banuelos played in the initiation or continuation of the forfeiture proceedings. In sum, there are disputed facts bearing on the issue of whether Defendants reasonably believed the forfeiture ordinance was applicable and forfeiture proceedings were warranted, as well as the degree of responsibility they had for initiating or continuing those proceedings. For that reason, the Court cannot grant summary judgment to either side on the qualified immunity issue.

**Municipal Liability:** Defendants maintain the municipal Defendant, the City of Albuquerque, is entitled to summary judgment because Plaintiffs have presented no evidence supporting their failure-to-train claim. The Court agrees. In response to Defendants' motion for summary judgment, Plaintiffs presented no evidence whatsoever concerning any training that might have been provided to Defendants. Although they pointed to the report of their expert, that report says nothing about inadequate training. [Pltf. Resp., unmarked Exh. 3, *passim*] Instead, Plaintiffs focus on the alleged constitutional violation that occurred, arguing that Defendants should have been informed they could not enforce a city ordinance if no actions actually took place within the city limits. Plaintiffs presented no evidence, however, that Defendants were not so informed. Furthermore, Plaintiffs presented no evidence indicating that city police officers have attempted to extraterritorially enforce city ordinances in the past. The mere fact that Defendants may have done so in this case is not sufficient to show the City failed to properly

train Defendants or was in any way deliberately indifferent to Plaintiffs' rights.  *See Winters v. Bd. of County Comm'rs*, 4 F.3d 848, 855 (10th Cir. 1993) (even though deputy's seizure of property was unconstitutional, summary judgment was properly granted to county due to lack of any evidence of improper training or supervision).  Summary judgment will be granted to the City on Plaintiffs' § 1983 claim.

**Defendant Boyers:**  Although Defendant Boyers is a party to this case, none of the summary-judgment briefs discusses his role in the events in question.  There is some suggestion that he may have been the individual who told Defendants to charge Gonzalez with driving on a revoked license, or the individual who told Defendants to initiate forfeiture proceedings.  Since neither side has provided any information as to what exactly Defendant Boyers did, the Court cannot grant summary judgment as to him.  If the evidence at trial is insufficient to establish that he had a role in any constitutional violation that might have occurred, the Court will entertain a motion to dismiss him as a Defendant.

**Conclusion**

As discussed above, application of the doctrine of collateral estoppel means that summary judgment must be granted on all claims, under both state-law and the United States Constitution, arising out of Defendants' stop of Gonzalez and the resulting initial seizure of his person and his vehicle.  Questions of fact remain, however, as to whether a constitutional violation occurred when the city forfeiture ordinance was applied to Plaintiffs' vehicle and forfeiture proceedings were pursued.  Questions of fact also remain as to whether the individual Defendants played any significant role in the initiation or pursuit of the forfeiture proceedings, and whether they had a reasonable, even if mistaken, belief that the forfeiture ordinance applied to Plaintiffs' vehicle.  Summary judgment is not appropriate, therefore, on either the § 1983 claim directed at the continued seizure and detention of that vehicle, or the qualified-immunity question.  Finally, summary judgment will be granted on the municipal-liability claim against the City of Albuquerque.

**ORDER**

A memorandum opinion having been entered this date, it is hereby ORDERED that the motion for summary judgment (Doc. 51) filed by Defendants be, and hereby is, GRANTED in part and DENIED in part.  It is also ORDERED that the motion for summary judgment (Doc. 56) filed by Plaintiffs be, and hereby is, DENIED.

Dated this 4th day of November, 2008.

_____
BRUCE D. BLACK
United States District Judge